UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMELLE RASHARD SMITH,

     Petitioner,

v.                                Case No. 8:18-cv-0049-KKM-SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## ORDER

    Jamelle Rashard Smith filed a timely, counseled petition under 28 U.S.C. § 2254, challenging his state convictions based on the sufficiency of the evidence presented at trial and alleged failures of both his trial and appellate counsel. (Doc. 1 & 4-1). Respondent filed a response opposing the petition. (Doc. 10). Smith did not reply. Upon consideration of the petition, memorandum, response, and appendix to the response, the petition is denied. Furthermore, a certificate of appealability is not warranted.

## I.   BACKGROUND

### A.   Procedural History

    A jury convicted Smith of one count of attempted first-degree murder, (Doc. 12, Ex. 1, p. 67), and the trial court sentenced him to twenty-five years in prison, (*Id.*, pp. 95-100). The state appellate court affirmed per curiam the conviction and sentence.

(Doc. 12, Ex. 5). Smith sought postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 12, Ex. 7). The state court summarily denied his motion. (Doc. 12, Ex. 8). The state appellate court affirmed per curiam the denial of postconviction relief. (Doc. 12, Ex. 11). The state appellate court also denied Smith's petition alleging ineffective assistance of appellate counsel, filed under Florida Rule of Appellate Procedure 9.141. (Doc. 12, Exs. 13, 14). Smith then timely filed this federal habeas petition under § 2254 alleging ten individual grounds of relief, the first two based on the sufficiency of the evidence presented at trial and the latter eight based on ineffective assistance of counsel. (Doc. 1).

### B.   Factual Background[1]

In the early morning hours of March 23, 2014, a large number of people gathered at a location known as "Man Spot" in Lake Wales, Florida.  The crowd was socializing, and alcohol was available. While there, Smith and Andrae Pittman got into a fight, and Smith shot Pittman numerous times. The State asserted that Smith acted with a premeditated intent to kill Pittman. Smith argued that he acted in self-defense.

#### 1.   The State's Evidence at Trial

Pittman testified that he and Smith were acquainted; they were "chilling" with a mutual friend about a week prior and there was "no bad blood" between them. (Doc. 12, Ex. 2, Vol. III, p. 295). Pittman conceded that years earlier, in 2008, they were

---

[1] The factual background is based on the trial transcript and appellate briefs.

involved in an incident where Pittman hit Smith with a gun. (*Id.*, p. 316). But Pittman testified that what happened in 2008 was "over with." (*Id.*, p. 327).

Witnesses called by the State described Smith as agitated and angry the night of the shooting. *See, e.g.*, (Doc. 12, Ex. 2, Vol. II, pp. 160, 227–28). Smith was dating Stephanie Gutierrez and spent time with her at Man Spot. (*Id.*, p. 260). When Smith saw Pittman talking to Gutierrez, he said something to Pittman and then "got into it with Stephanie." (*Id.*, p. 227). Smith was described as upset with Stephanie and as having a confrontation with "other girls" to whom Pittman was talking. (*Id.*, p. 228). Pittman even tried to diffuse a verbal altercation between Smith and Markisha Wilson. (*Id.*, p. 229). Eventually, Pittman told Smith to calm down because no one wanted trouble and to go home. (*Id.*, p. 230).  At one point, a witness recalled, Smith indicated he was going to fight that night. (*Id.*, p. 165).

Eventually, Pittman agreed to fight. Smith hit Pittman, and a fistfight began between the two. (*Id.*, pp. 165, 261-62; Vol. III, pp. 359, 388-89). They moved into a street and between cars as they fought. (*Id.*, pp. 247-48, 262; Vol. III, pp. 303-04, 347). A crowd was watching them, but the fight remained solely between Smith and Pittman. Witnesses agreed that Pittman was winning the fight. Pittman pulled Smith's tank top, causing Smith to spin around. (*Id.*, Vol. II, pp. 277–78). Smith then pulled a firearm from his pants. (*Id.*, p. 234; Vol. III, p. 304). One witness testified that, before he pulled the gun, Smith appeared mad because people saw him losing. (*Id.*, Vol. II, p. 283). When Pittman saw Smith reach for his pocket, Pittman began moving backwards away from

Smith. (*Id.*, Vol. III, p. 304). At that time, Smith and Pittman had physically separated. (*Id.*, Vol. II, p. 282; Vol. III, p. 304).

Smith shot Pittman in the stomach. Pittman fell to the ground, incapacitated. Smith shot Pittman a second time. (*Id.*, Vol. III, p. 305). Pittman begged Smith not to shoot him again. Smith continued shooting, firing a total of nine shots, seven of which hit Pittman. (*Id.*, Vol. II, p. 201; Vol. III. p. 308). Onlookers subdued Smith, who left the scene. Smith called 911 a short time later and turned himself into police.

### 2.    The Defense's Evidence

Smith denied that he was upset or angry that night. Stephanie Gutierrez testified that Smith was "happy" and acting "normal" before the fight. (Doc. 12, Ex. 2, Vol. IV, pp. 476-77). Smith testified that he had "no beef" with Pittman following the 2008 incident, but opined that Pittman had a reputation for violence. (*Id.*, p. 549). Smith also testified that he believed most of the men present that night had some kind of weapon and that he felt like he could not trust people.

Smith testified to the following version of events: He was shaking hands with another person when Pittman suddenly punched him. He did not see Pittman that night before Pittman hit him, and he tried to run away. A crowd was moving towards him and Pittman was chasing him. He was down on one knee while Pittman was hitting him in the head. Smith told Pittman to stop. He thought Pittman would kill him or severely beat him. (*Id.*, pp. 529–39).

Smith testified that Pittman was still beating him when Smith started shooting. Smith testified that Pittman "kept coming at" him after the first shot. (*Id.*, p. 558). Smith testified that he did not intend to kill Pittman and that he shot Pittman because he was in fear. Smith explained that once he started shooting, he "never stopped." (*Id.*, p. 535). Gutierrez testified that she saw Smith on his back with the crowd over him when she heard gunshots. (*Id.*, p. 478).

## II.   Standards of Review of an Application Under Section 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief under the AEDPA can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*,

529 U.S. 362, 413 (2000). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Id.* at 412. A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

For purposes of § 2254(d)(2), a state court's findings of fact are presumed correct. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct . . . ."). A petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. § 2254(e)(1).

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694.  As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of

clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* The State may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

In addition to satisfying the deferential standard of federal court review of a state court adjudication, a federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in a federal petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A petitioner satisfies this exhaustion requirement if he fairly presents the claim in each appropriate state court and alerts that court to the federal nature of the claim. *Baldwin v. Resse*, 541 U.S. 27, 29 (2004).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## III. ANALYSIS

### A. Sufficiency of the Evidence (Grounds One and Two)

Smith challenges the sufficiency of the evidence presented to (1) rebut his prima facie case of self-defense and (2) establish premeditation. (Doc. 1, pp. 16–17). Under the Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), a court reviewing a challenge to the sufficiency of the evidence must evaluate whether, after viewing the evidence in the light most favorable to the prosecution, any rational juror could have found proof of guilt beyond a reasonable doubt. The *Jackson* standard must

be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Under *Jackson*, the prosecution does not have "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." *Id.* at 326. If the record contains facts supporting conflicting inferences, the jury is presumed to have resolved those conflicts in favor of the prosecution and against the defendant. *Id.*

Consistent with the AEDPA, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

## 1.    Ground One

Smith contends that the State presented insufficient evidence to overcome his claim of self-defense and that the state court should have granted his motion for a judgment of acquittal and motion to dismiss under the Florida Stand Your Ground law.[2] (Doc. 4-1, p. 22, 25); (Doc. 12, Ex. 2, Vol. IV, 568). Respondent asserts that Smith's claim is unexhausted because he never alerted the state court to the federal dimension of the claim. (Doc. 10, p. 15). Near the beginning of his response,

---

[2] Petitioner does not identify whether he challenges the state court's decision as an unreasonable application of clearly established federal law or an unreasonable determination of facts. *See* 28 U.S.C. § 2254(d)(1)–(2). Regardless, his claims fail under either standard.

Respondent concedes that all claims are exhausted "for federal habeas corpus purposes." (*Id.*, p. 8). While a state may expressly waive exhaustion of as to any issue in a federal habeas case, it is also within the district court's discretion to accept any such waiver. *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966–67 (11th Cir. 2016) ("Where a state waives exhaustion, the district court may consider the procedural bar sua sponte if 'requiring the petitioner to return to state court to exhaust his claims serves an important federal interest.' " (quoting *Esslinger v. Davis*, 44 F.3d 1515, 1524 (11th Cir. 1995))).

Because Smith never identified the federal nature of this self-defense claim to either the state trial court or state appellate court, he failed to exhaust Ground One. At trial, defense counsel made the following motion:

> [A]t this time I'm moving for a judgment of acquittal on the grounds that the State has not proved the necessary elements to prove attempted premeditated murder and there definitely is not enough to go forward on a first degree murder at this time. The State has not rebutted the defendant's testimony even in their case in chief. I'm also moving at this time for the Court to grant a motion to dismiss under Florida Statute, the stand your ground law, which I gave the court the case law.

(Doc. 12, Ex. 2, Vol. IV, p. 565). Defense counsel provided citations only to Florida Statutes and Florida case law. (*Id.*). In ruling on the motions, the trial court concluded "[t]here is sufficient conflict in the testimony that it is a classic case for jury resolution. So I'll deny the motion and let the jury decide the facts of the case." (*Id.*, p. 568).

Smith's appellate brief on direct appeal refers only to state law, and he nowhere suggests that his challenge of the sufficiency of the evidence is federally based. (Doc. 12, Ex. 3). Nothing in the record "put the state court on notice that [Smith] intended to raise a federal claim." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458–59 (11th Cir. 2015) (finding a sufficiency of the evidence claim not exhausted where the petitioner did not cite *Jackson* or otherwise note the federal standard was applicable).

The Court declines to accept Respondent's exhaustion waiver for two reasons. First, it appears that the waiver was inadvertent—although making a passing reference to *all* grounds being exhausted, the Respondent vigorously argued failure to exhaust Grounds One and Two later in its response. (Doc. 10, pg. 15–20). Because the waiver is contradicted elsewhere and seems to have been a drafting error, the Court finds that exhaustion has not been expressly waived because the waiver does not "communicate[] to the court its intention not to pursue" exhaustion as to these grounds. *Vasquez*, 827 F.3d at 967; *see also McNair v. Campbell*, 416 F.3d 1291, 1304 (11th Cir. 2005) (finding no express waiver where the state failed to raise exhaustion). Second, to the extent the Respondent's drafting error can be construed as an express waiver, the Court exercises its direction to reject the waiver because it would not serve a federal interest and would be contrary to the AEDPA to rule on the underlying issue based on a record which shows no opportunity for the state courts to adjudicate the federal question in the first

instance. *See Esslinger*, 44 F.3d at 1524–25; *Thompson v. Wainwright*, 714 F.3d 1495, 1503–04 (11th Cir. 1983) ("Exhaustion of state remedies is not a concept of subject matter jurisdiction but rather of federalism and comity, intended to give the state the initial opportunity to decide alleged violations of federal constitutional rights.").

Notwithstanding the Court's decision not to accept the exhaustion waiver, Smith is not entitled to relief on the merits. When reviewing a case for sufficiency of the evidence, a federal court must "look to state law for the substantive elements of the criminal offense." *Preston*, 785 F.3d at 464 (quoting *Coleman v. Johnson*, 566 U.S. 650, 656 (2012)). Under Florida law, if a defendant makes a prima facie showing of self-defense, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense. *Early v. State*, 223 So. 3d 1023, 1025 (Fla. 1st DCA 2017). If the state does not carry its burden, the trial court must grant a motion for judgment of acquittal for the defendant but only if "the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." *Id.* at 1025–26 (quoting *Morgan v. State*, 127 So. 3d 708, 717 (Fla. 5th DCA 2013)).

Smith fails to establish that the state court unreasonably rejected his claim. When he moved for a judgment of acquittal and a motion to dismiss under Florida Statutes based on the State's failure to rebut his prima facie case of self defense, the state trial court concluded that the evidence presented a sufficient conflict to warrant resolution by the jury. (Doc. 12, Ex. 2, Vol. IV, p. 568). Under Florida law, "[a] person is justified in using or threatening to use deadly force if he or she reasonably believes that using or

12

threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony". § 776.012(2), Fla. Stat. The state trial court correctly applied this Florida law on self-defense when rejecting Smith's motion for judgment of acquittal, as evidenced in its jury instructions. (Doc. 12, Ex. 1, p. 57) (instructing on self-defense, specifically on the legal standard under the governing statute—the subjective, reasonable person standard—and the right of the defendant to stand his ground if he was not engaged in unlawful activity and was attacked in a place he had a right to be).

Further, the record supports the state court's ruling and the jury's verdict. The State presented evidence that Pittman began to back away from Smith once Smith reached for his gun (Doc. 12, Ex. 2, Vol. III, p. 304); that Smith's first shot knocked Pittman to the ground (*Id.*, Vol. II, p. 235; Vol. III, pp. 304-05); that Pittman was incapacitated and begged Smith not to shoot again (*Id.*, Vol. II, pp. 235, 264; Vol. III, p. 305); and that Smith continued to shoot at Pittman (*Id.*, Vol. II, pp. 236, 264; Vol. III, p. 305). A rational juror, viewing the evidence in the light most favorable to the State, could find Smith did not reasonably believe that the use of deadly force was necessary to prevent imminent death or great bodily injury to himself or another or to prevent the commission of a forcible felony. Smith has not established that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable factual determination. Accordingly, he is not entitled to habeas relief on Ground One.

13

### 2.    Ground Two

Smith argues that the State presented insufficient evidence of premeditation, violating his due process rights under *Jackson*. Smith contends that the State failed to adduce sufficient evidence to show that he consciously intended to kill Pittman. (Doc. 4-1, pp. 25–27). According to Smith, he was "surrounded by a hostile crow[d], getting beaten up when he took out a gun and fired several shots in rapid succession." (Doc. 1, p. 17). He further contends that he made no statements showing an intention to kill Pittman and did not "make any special arrangements to bring a weapon to use against the victim." (*Id.*).

Respondent again argues that Smith failed to exhaust this claim because he did not present the federal nature of it to the state courts. (Doc. 10, p. 17). At the appellate court, Smith raised his federal right to due process when he argued on appeal that the state court erred in rejecting his motion for judgment of acquittal, which challenged the sufficiency of the State's evidence of premeditation. (Doc. 12, Ex. 3, p. 27). Specifically, Smith argued that "[t]he due process clauses of the United States and Florida constitutions require the State to prove a defendant guilty beyond a reasonable doubt." (*Id.*). Smith exhausted this claim in state court and this Court will review the claim on the merits.

In Florida, to prove attempted first-degree murder, the State had to prove beyond a reasonable doubt that defendant committed "(1) an act intending to cause death that went beyond just thinking or talking about it; (2) a premeditated design to

kill; and (3) the commission of an act which would have resulted in the death of the victim except that someone prevented the defendant from killing the victim or the defendant failed to do so." *Holliday v. State*, 781 So. 2d 496, 498 (Fla. 5th DCA 2001). The Florida Supreme Court has further explained that "[p]remeditation is defined as 'a fully-formed conscious purpose to kill, which exists in the mind of the perpetrator for a sufficient length of time to permit . . . reflection, and in pursuance of which an act of killing ensues.'" *Johnston v. State*, 863 So. 2d 271, 285 (Fla. 2003). Premeditation may be formed "a moment before the act but must exist for a sufficient length of time to permit reflection as to the nature of the act to be committed and the probable result of that act." *Coolen v. State*, 696 So. 2d 738, 741 (Fla. 1997) (quoting *Wilson v. State*, 493 So. 2d 1019, 1021 (Fla. 1986)). Premeditation may be established by circumstantial evidence. *Woods v. State*, 733 So. 2d 980, 985 (Fla. 1999). "Such evidence of premeditation includes the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted." *Id.* (quotation omitted).

The state trial court denied the motion for acquittal because it concluded "[t]here is sufficient conflict in the testimony that it is a classic case for jury resolution." (Doc. 12, Ex. 2, Vol. IV, p. 568). Smith fails to show that no rational juror viewing the evidence in the light most favorable to the State could find proof of premeditation beyond a reasonable doubt, much less that the trial court's determination that on this

15

issue was unreasonable. *See Jackson*, 443 U.S. at 319. First, the state court correctly applied the law when denying the motion for judgment of acquittal. (Doc. 12, Ex. 2, Vol. IV, p. 568). Additionally, it correctly instructed as to the elements of the crime and of what the State was required to prove regarding premeditation (and Smith takes no issue with the jury instructions). (Doc. 12, Ex. 1, p. 51).

The record likewise supports the state trial court's ruling. The State presented evidence that Smith was agitated prior to the offense, and in particular, that he was upset when Pittman talked to Stephanie Gutierrez. (Doc. 12, Ex. 2, Vol. II, p. 227). State witnesses testified that Pittman told Smith to calm down, but that Smith initiated physical contact with Pittman. (*Id.*, Vol. II, pp. 165, 229, 266; Vol. III, pp. 300, 346, 359, 388-89). The State presented evidence that Pittman was backing away from Smith when Smith reached for his gun. (*Id.*, Vol. III, p. 304). The State's evidence also showed that Smith's first shot incapacitated Pittman and caused him to fall to the ground, from which position he pleaded with Smith not to shoot him again. (*Id.*, Vol. II, pp. 235, 264; Vol. III, p. 304-05). Yet Smith fired another six shots at Pittman. (*Id.*, Vol. III, pp. 305, 308). Viewing this evidence in the light most favorable to the State, a rational juror could find the evidence sufficient to prove beyond a reasonable doubt the "fully-formed conscious purpose to kill" necessary to establish premeditation. *See Johnston*, 863 So. 2d at 285.

Smith has not shown that the state court's rejection of his claim was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable factual determination. He is not entitled to relief on Ground Two.

**B.**  **Ineffective Assistance of Counsel (Grounds Three, Four, Five, Six, Seven, Eight, Nine, and Ten)[3]**

Smith brings six claims that his trial counsel was ineffective under the Sixth Amendment (Grounds Three, Four, Five, Six, Seven, and Eight), a claim that the cumulative error of his trial counsel entitles him to relief (Ground Nine), and one claim that his appellate counsel was ineffective (Ground Ten). Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687. Because Smith fails to demonstrate that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland*, he is not entitled to relief on any of these grounds.

The first part of *Strickland* "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes

---

[3] Smith seeks an evidentiary hearing on Grounds Three, Five, Six, and Seven. An evidentiary hearing is not warranted. *See Schriro*, 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

deficient performance if, "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

18

### 1.    Ground Three

Smith asserts that trial counsel rendered ineffective assistance not filing a pretrial motion to dismiss the attempted murder charge under Florida's Stand Your Ground law, which entitles applicants to immunity from prosecution if they satisfy its requirements. *See* § 776.032(1), Fla. Stat. (providing that a person who uses force as permitted by Florida law "is immune from criminal prosecution"); (Doc. 1, p. 17–18). Smith claims that he would have been granted immunity from prosecution had counsel filed the motion. (*Id.*). Alternatively, he contends that the motion would have assisted him in "furthering his defense." (*Id.*).

The state court denied Smith's claim because it found a Stand Your Ground motion would not have been successful based on the facts: "Several of the witnesses at trial, Kawana Robinson, Jacquelyn Jennings, Sandralson Holmes, Phillip Odom, Willie Peterson, all testified that [Smith] threw the first punch and shot the victim while standing over him." (Doc. 12, Ex. 8, pp. 1). The state court also stated that trial testimony indicated "that the victim was moving away from [Smith] when the firearm was brandished" and that they had been engaged only in a fist fight before that time. (*Id.*) Given those facts, the state postconviction court concluded that Smith could not demonstrate deficiency or prejudice. (*Id.* at 2).

Smith does not show that the state court unreasonably applied *Strickland*. The underlying question of the validity of a motion to dismiss under Florida's Stand Your Ground law is a matter of state law. This Court must defer to the state court's

determination that a motion to dismiss would not have succeeded. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[The United States Supreme Court has] repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done . . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.' " (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997))). Therefore, Smith can succeed on this issue only if he can establish that, assuming the futility of the motion as determined by the state court, it was nonetheless an unreasonable application of *Strickland* to conclude he failed to establish ineffective assistance of counsel. Obviously not.

Nor can Smith show that the state court unreasonably determined the facts in denying this ground. Smith contends that the state court made an erroneous factual finding that witnesses testified that Smith "began" shooting while he was standing over

Pittman. Smith also notes that witness Kawana Robinson testified that Smith and Pittman were "contacting each other" when Smith began shooting. (Doc. 12, Ex. 2, Vol. II, p. 234). Therefore, Smith contends that the state court made an unreasonable factual finding in stating that witnesses, including Robinson, testified Pittman was moving away from Smith when Smith started shooting. Despite these apparent discrepancies (different witnesses testified to various accounts of the event), Smith did not show by clear and convincing evidence that the state court's denial of his claim was "based on" an unreasonable determination of the facts, as he must under § 2254(d)(2). The state court considered numerous facts in ruling that a motion to dismiss would have been denied. It is this ruling to which the Court must defer on federal habeas review. *Cf. Bishop v. Warden, GDCP*, 726 F.3d 1243, 1255 (11th Cir. 2013) (describing the difference between a judicial "opinion" that provides a court's reasoning and a judicial "decision" and explaining that deference is accorded to the state court's "decision" even absent an "opinion.").

Lastly, Smith does not explain how filing a motion to dismiss would have aided him in "furthering his defense." The state court found that the motion would have failed as a matter of Florida law, and as the state court's order indicates, counsel is not ineffective in forgoing a claim that lacks merit. *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Accordingly, Smith has not met his burden of showing that the state court's decision involved an unreasonable application of

*Strickland* or was based on an unreasonable factual determination. Smith is not entitled to relief on Ground Three.

### 2.    Ground Four

Smith contends that trial counsel rendered ineffective assistance by failing to ask the jury panel about the media "coverage of the African American community in the Ferguson, Missouri riots" that occurred prior to trial. (Doc. 1, p. 18). Smith argues that "[i]t was imperative to question the venire regarding the portrayal of African American communities' propensity for riots and violence to ensure the media coverage would [sic] affect the venire's ability to distinguish the events at Ferguson from the charged events." (*Id.*, pp. 18–19). The state court summarily denied Smith's ineffective assistance claim when he presented it in his Rule 3.850 motion, concluding that it should have been raised on direct appeal, not postconviction attack. (Doc. 12, Ex. 8, p. 2).

Smith does not show that the state postconviction court unreasonably denied his ineffective assistance claim. Smith merely speculates that members of the jury panel may have been impacted by what he describes as the media's "portrayal of African American communities' propensity for riots and violence." (Doc. 1, p. 19). Smith's theory about Ferguson's influence on his jury in Polk County, Florida, and how those national events affected his jury's ability to remain fair and impartial is entirely speculative. This sort of conjecture is not a basis to conclude that counsel was ineffective. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a petitioner's "unsupported allegations" that are "conclusory in nature and lacking factual

substantiation" cannot sustain an ineffective assistance claim). Accordingly, Smith cannot show that the state court unreasonably applied *Strickland* or that its decision was based on an unreasonable determination of the facts. Smith is not entitled to relief on Ground Four.

### 3.   Ground Five

Smith argues that counsel was ineffective in not objecting to improper prosecutorial remarks. Smith claims that the prosecutor asked the jury to hold Smith "accountable" and that amounted to an impermissible plea for the jury's sympathy, which in turn rendered his trial "fundamentally unfair." (Doc. .4-1, p. 34). Smith identifies one remark in opening statements in support of this ground:

> And, that, ladies and gentlemen, is why you should find the defendant guilty as charged and hold him accountable for shooting the unarmed Mr. Andrae Pittman.

(Doc. 12, Ex. 2, Vol. II, p. 121).

> Smith also identifies the following two statements in closing argument:

> Mr. Pittman was removing himself from the scene even though he knew he was about to get blasted by the defendant and that first shot took him out and incapacitated him and the defendant just kept firing, kept firing, kept firing until there were no more rounds in the clip and that's why the defendant needs to be held accountable for what he did for shooting the unarmed Mr. Pittman.
> . . .

> Ladies and gentlemen, hold the defendant accountable for what he chose to do that did not have to happen, was not legally justified.

(Doc. 12, Ex. 2, Vol. IV, p. 589; Vol. V, p. 608).

The state court denied Smith's claim because the comments were not improper and did not rise to the level of fundamental error. (Doc. 12, Ex. 8, p. 2). Specifically, the state court noted that these arguments were not the type of "golden rule'" arguments that parties are prohibited from making. (*Id.*).

To the extent the state court's ruling depends on an application of state law concerning the propriety of the remarks, this Court must defer to the state court's determination that the comments were not improper and did not constitute fundamental error. *See Pinkney*, 876 F.3d at 1295, 1297–98. Regardless, Smith fails to show that the state court's denial was an unreasonable application of *Strickland*'s deficiency prong. While a prosecutor must refrain from appealing to the jury's "passion or prejudice," *see United States v. Rodriguez*, 765 F.2d 1546, 1560 (11th Cir. 1985), Smith does not establish that the prosecutor's comments were improper. The prosecutor's comments were made in the context of arguing that the jury should reject Smith's self-defense theory and the State had presented sufficient evidence to overcome that theory. (Doc. 12, Ex. 2, Vol. II, p. 121; Vol IV, pp. 587-89; Vol. V, p. 608). A prosecutor may argue what inferences the jury should make from the evidence. *See Merck v. State*, 975 So. 2d 1054, 1061 (Fla. 2007) (stating closing argument is an opportunity for attorneys "to review the evidence and to explicate those inferences which may be reasonably drawn from the evidence"). In addition, as the state court noted, the comments did not ask the jury to think about being in Pittman's position, and they therefore did not violate the "golden rule." *See Mosley v. State*, 46 So. 3d 510, 520 (Fla. 2009) (explaining that

24

improper golden rule arguments "are arguments that invite the jurors to place themselves in the victim's position during the crime and imagine the victim's suffering").

Further, Smith fails to show that the state court unreasonably applied *Strickland*'s prejudice prong. Even assuming that the trial court would have sustained an objection to the comments and instructed the jury to disregard the prosecutor's remarks about holding Smith "accountable," Smith does not establish a reasonable probability of a different outcome in the light of the State's evidence of guilt. He is not entitled to relief on Ground Five.

### 4.   Ground Six

Smith alleges that trial counsel was ineffective in not introducing photographs showing the extent of injuries Smith "sustained to his face, head, and knees." (Doc. 1, p. 20). Smith asserts that the photographs would have provided the jury with "clear proof that Smith reasonably feared for his life" when he used deadly force. (*Id.*). Smith also asserts that the photographs would have refuted the prosecutor's contention that Smith was not seriously injured.[4]

---

[4] Smith notes that the prosecutor indicated in his opening statement and closing argument that Smith was not injured. The prosecutor remarked in his opening statement:

> But you're . . . going to see pictures of the defendant and you're going to see his face and you're going to see his arms and he had no injuries. So this wasn't a type of fight where the defendant got brutalized or beaten or was in fear of anything.

The state court denied Smith's claim because the record indicated that pictures of Smith's face were shown at trial and did not show any injuries. (Doc. 12, Ex. 8, pp. 2–3). Further, Officer John Dellavalle also testified on cross-examination that Smith suffered abrasions to his side and knee and that he documented those injuries. (*Id.*, pp. 209–11). Officer Dellavalle acknowledged that the photographs of Smith's side and a close-up photograph of Smith's knee were not introduced by the State. (*Id.*, p. 210–11). (*Id.*)

Smith has not established that the state court unreasonably applied *Strickland* in ruling that counsel was not ineffective for not introducing *additional* photographs. As the state court noted, evidence about the injuries was introduced at trial. Officer Dellavalle testified about the injuries that he observed. Additionally, Smith testified about his injuries on his head and face and contended that these injuries were depicted in the photographs introduced into evidence. (Doc. 12, Ex. 2, Vol. IV, pp. 553–55). Smith also testified that his knee and side were scraped. (*Id.*, p. 555).

---

(Doc. 12, Ex. 2, Vol. II, p. 114).

In his closing argument, the prosecutor stated:

[A]s you see from the pictures, he doesn't have any serious injuries or any visible injuries.
. . .

But nobody was knocked out. Nobody was bleeding. Nobody had any broken bones.

(Doc. 12, Ex. 2, Vol. IV, pp. 575, 577).

Further, while Smith claims that photographs would show the full extent of his injuries, he does not provide the photographs or more specifically describe what the photographs depict. Unsupported, vague allegations fail to establish ineffective assistance. *See Tejada*, 941 F.2d at 1559. Therefore, Smith has not shown a reasonable probability of a different outcome had counsel introduced additional photographs. Therefore, he also fails to show that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Six.

### 5.    Ground Seven

Smith alleges that trial counsel was ineffective in not presenting available medical records that would have shown the extent of Pittman's intoxication at the time of the offense. Smith argues that this evidence would "support Smith's reasonable fear for his life, to show the victim's judgment was impaired at the time of the incident, and to rebut the credibility of State witnesses that testified the victim was not too intoxicated at the time of the incident." (Doc. 1, p. 21).

The state court denied Smith's claim because (1) Smith also told that court that trial counsel obtained the records in question; and (2) witnesses for the State testified that the victim was attempting to be the peacekeeper and Smith threw the first punch and acted as the aggressor. (Doc. 12, Ex. 8, p. 3). The state court thus concluded that whether the victim was drinking would not alter the outcome of the proceeding. (*Id.*).

Smith is not entitled to relief because the state court's conclusion was not unreasonable. Pittman testified that he had two drinks at Man Spot and that he smoked a joint earlier in the day. (Doc. 12, Ex. 2, Vol. III, pp. 301-02). Pittman testified that he was not drunk and he did not feel like he was "high or out of it." (*Id.*, p. 302). Pittman testified that he had his senses about him and could see and understand what was happening. (*Id.*).[5]

The state court did not unreasonably conclude that Smith failed to show a reasonable probability that the outcome of trial would have been different even if counsel established that Pittman was more intoxicated than the State's evidence indicates.[6] While Smith asserts that Pittman was "extremely intoxicated," Smith does not show how Pittman's alleged level of intoxication made Pittman act in a manner that would have justified Smith's use of deadly force. As Smith does not show that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination, he is not entitled to relief on Ground Seven.[7]

---

[5] While Smith contends that "State witnesses" testified that Pittman was not too intoxicated, he does not name the witnesses or cite to the portions of the trial transcript containing such testimony.

[6] Smith has not presented the medical records, nor has he described with specificity what information concerning Pittman's intoxication those records would reveal.

[7] Smith asserts that the state court made an unreasonable factual finding that the State's evidence showed Smith drew his firearm while Pittman was on the ground. Having considered the state court's ruling in its entirety, Smith has failed to establish that the ruling was "based on" an unreasonable determination of the facts in the light of the evidence presented in the state court proceeding. *See* § 2254(d)(2).

6.      **Ground Eight**

Smith contends that trial counsel was ineffective in not presenting a sufficient motion for judgment of acquittal. Smith contends that "[i]nstead of pointing to conflicts in the evidence, counsel needed to argue that no evidence supported a finding of premeditation, including the rapid firing of several rounds." (Doc. 1, p. 22). He claims that the motion would have been granted had counsel raised this argument.

The state court denied Smith's claim. As to the first motion for judgment of acquittal, the state court concluded that the motion would not have been granted based on Smith's alternative argument. (Doc. 12, Ex. 8, p. 3). As to the second motion for judgment of acquittal, the state court similarly conclude that the motion would not have been granted and would not have changed the outcome of the proceedings. (*Id.*).

Smith does not show that the state court unreasonably denied his claim. First, to the extent the state court concluded the motions for judgment of acquittal would have been denied, this Court is obliged to defer because that is a question of state law. *Pinkney*, 876 F.3d at 1295 ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law." (quoting *Alvord*, 725 F.2d at 1291)); *see also Rightmire v. Fla., Sec'y Dep't of Corr.*, No. 17–10947–D, 2017 WL 3923327, at *3 (11th Cir. 2017) (describing a motion for judgment of acquittal as a matter of state law). Counsel cannot be deficient for failing to raise a nonmeritous

claim. *See Bolender*, 16 F.3d at 1573 ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

Further, to the extent Smith appears to contend that counsel should have argued that evidence of multiple gunshots did not establish premeditation because he fired them rapidly, the state court did not unreasonably reject Smith's claim in the light of evidence that the first shot was fired as Pittman backed away and that Smith continued shooting after Pittman was on the ground. (Doc. 1, p. 21); *see Arnold v. State*, 892 So. 2d 1172, 1173 (Fla. 5th DCA 2005) ("[A] trial court should not grant a motion for judgment of acquittal unless the evidence adduced is such that no view that the jury may lawfully take of it favorable to the State can be sustained under the law."). Additionally, as addressed in Ground Two, the state court rejected Smith's motion for judgment of acquittal because the evidence presented conflicts that required the jury's resolution. Thus, Smith fails to show a reasonable probability of a different outcome even if counsel had raised the arguments that Smith proposes. Smith has not shown that the state court's ruling involved an unreasonable application or was based on an unreasonable determination of facts. He is not entitled to relief on Ground Eight.

### 7.     **Ground Nine**

Smith asserts that he is entitled to relief based on the cumulative effect of counsel's alleged errors. (Doc. 1, p. 23). The state court denied his claim because it had denied all other claims of ineffective assistance. (Doc. 12, Ex. 8, p. 3). Smith does not show that the state court's finding was contrary to, or involved an unreasonable

application of, clearly established federal law. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (stating that when none of the individual claims of error have merit, "we have nothing to accumulate"). Smith is not entitled to relief on Ground Nine.

### 8.    Ground Ten

Smith also argues that his appellate counsel was ineffective. The entirety of Smith's argument is that "[c]ounsel provided ineffective assistance of counsel by failing to raise arguments on appeal. Smith should be afforded the opportunity to have the appellate arguments considered." (Doc. 1, p. 24).[8] Rule 2(c)(1) of the Rules Governing Section 2254 Cases in the United States District Courts requires a petitioner to "specify all the grounds for relief available to the petitioner." Rule 2(c)(2) further requires a petitioner to "state the facts supporting each ground." Smith does not specify the which grounds of ineffective assistance of appellate counsel he intends to bring and does not state any facts in support. In addition, Respondent fails to acknowledge or address the argument raised in Ground Ten. Thus, this claim is not adequately briefed by either party. However, Smith states that he raises the same claim he brought in his Rule 9.141 petition alleging ineffective assistance of appellate counsel. Accordingly, the Court will review the merits of the claim presented to the state appellate court.

---

[8] Smith's memorandum in support of his petition also does not address the claim of ineffective assistance of appellate counsel.

In his Rule 9.141 petition, Smith argued that appellate counsel was ineffective in not arguing that the trial court erred in denying his motion for new trial with respect to media coverage of events in Ferguson, Missouri. (Doc. 12, Ex. 13).[9] The state appellate court denied his petition without explanation. (Doc. 12, Ex. 14). The question underlying Smith's ineffective assistance claim is whether the trial court erred in denying his motion for new trial. Florida Rule of Criminal Procedure 3.600 sets out the bases for granting a new trial and the validity of a motion to dismiss filed under Rule 3.600 is a question of Florida law. This Court must defer to the state appellate court's application of this underlying state law question and its determination that Smith would not have succeeded on appeal had appellate counsel raised the question. *See Pinkney*, 876 F.3d at 1295; *Herring*, 397 F.3d at 1354–55.

Smith fails to show that the state court's rejection of his claim involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. Accordingly, he is not entitled to relief on Ground Ten.

## IV.   CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court

---

[9] Counsel filed a motion for new trial, arguing in part that a new trial was warranted because she did not question the prospective jurors about their opinions of the events in Ferguson. (Doc. 12, Ex. 1, p. 69). The trial court denied the motion. It noted that the facts of Smith's case were distinguishable from the facts surrounding events in Ferguson and found that there was no reason to question the jury on the topic. (Doc. 12, Ex. 1, p. 72).

or court of appeals must first issue a certificate of appealability (COA). *Id.* To obtain a

COA, a petitioner must show that "jurists of reason could disagree with the district

court's resolution of his constitutional claims or that jurists could conclude the issues

presented are adequate to deserve encouragement to proceed further." *Miller-El v.*

*Cockrell*, 537 U.S. 322, 326 (2003); 28 U.S.C. § 2253(c)(2). Smith has not made the

requisite showing. Because Smith is not entitled to a COA, he is also not entitled to

appeal in forma pauperis.

It is therefore **ORDERED** that Smith's Petition for Writ of Habeas Corpus

(Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Smith and to

**CLOSE** this case.

**ORDERED** in Tampa, Florida, on March 31, 2021.

Kathryn Kimball Mizelle
United States District Judge